# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK ZEPEDA JR., | Case No. 1:25-cv-00932-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| FRANK BISIGNANO, Commissioner of Social Security, | |
| Defendant. | (Doc. 1) |
| _____/ | |

## I.      INTRODUCTION

Plaintiff Frank Zepeda Jr. ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.      FACTUAL BACKGROUND

On June 14, 2021, Plaintiff filed claims for disability insurance benefits ("DIB") and SSI payments, alleging he became disabled on September 9, 2014, due to diabetic retinopathy; retinal detachment; endophthalmitis; Charcot foot disease; stage 3 kidney disease; neuropathy in both hands and feet; heart condition; diabetes; high blood pressure; right big toe amputation; and nerve damage

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (*See* Doc. 10.)

in his right thumb.  (Administrative Record ("AR") 18, 65, 90, 117, 140.)  He thereafter amended his alleged onset date to June 14, 2021, and dismissed his claim for DIB.  (AR 44.)

Plaintiff was born in 1972 and was 48 years old on the alleged disability onset date.  (AR 27, 44, 64, 89, 116, 139.)  He has a high school education (AR 27, 303) and previously worked as a dishwasher and a cook (AR 303, 309, 330).

## A.    Relevant Evidence of Record[2]

In June 2021, Plaintiff presented for a follow up appointment to treat his paraproteinemia, reduced renal function, and anemia.  (AR 1354–59.)  It was also noted that Plaintiff has Charcot foot disease and wished to get a referral to podiatry for pain.  (AR 1354.)  Plaintiff's physical examination was normal, including normal gait.  (AR 1357.)  He was assessed with "Charcot's joint, unspecified, ankle and foot" and referred to a podiatrist as requested.  (AR 1357, 1359.)

Plaintiff underwent a consultative examination by Vinit Agrawal, M.D., in September 2021. (AR 1339–44.)  He complained of neuropathy in both feet with lower extremity weakness and pain. (AR 1340.)  Plaintiff report difficulty with standing, walking, and bending for most activities due to loss of sensation in his bilateral lower feet.  (AR 1340.)  He demonstrated some difficulty moving around the waiting room, a limp walking down the hall to the examination room, significant effort to sit in a chair, significant difficulty getting in and out of chair and getting onto the examination table, and significant difficulty taking off shoes and socks.  (AR 1341.)

On examination, Dr. Agrawal found Plaintiff's joint ranges of motion were "not within normal limits."  (AR 1341.)  Plaintiff's cervical spine showed some "discernable limitations for extension [and] rotation," and he exhibited "discernable limitations for flexion" in his thoracolumbar spine.  (AR 1341–42.)  Dr. Agrawal noted a positive straight leg raising test.  (AR 1342.)  Plaintiff had limited fine and gross abilities in his hands with "diminished" grip strength in his right hand. (AR 1342.)  There was some evidence of deformities in his feet.  (AR 1342.)  Dr. Agrawal noted that Plaintiff's gait is "antalgic due to right leg pain," "[h]eel-walking, toe-walking, and tandem walking [were] not performed due to loss of balance," and "Romberg sign [was] present."  (AR

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

1343.) Plaintiff exhibited "extreme difficulty" squatting and rising and "[g]love like neuropathy" in both hands and below his knees. (AR 1343.) Dr. Agrawal assessed Plaintiff with diabetic polyneuropathy involving his bilateral feet and hands and lumbar radiculopathy. (AR 1343.) He opined that Plaintiff could lift and carry 5 to 10 pounds infrequently; could stand, walk, or sit for one hour in an eight-hour day; and could never stoop, crouch, kneel, crawl, or balance. (AR 1343.)

In February 2022, Plaintiff was seen following his recent hospitalization for evaluation of "new onset heart failure and/or decompensated renal failure" after experiencing scrotal swelling and bilateral leg edema. (AR 1907–12.) His physical examination showed normal gait and minimal edema in both lower extremities. (AR 1910.)

Plaintiff presented for a follow up appointment in April 2023, after hospitalization to treat his "poorly controlled diabetes mellitus." (AR 1587–89.) Plaintiff was noted to be "wheelchair bound" and complaining of numbness, tingling, and vision changes. (AR 1587.) On examination, normal cardiovascular and musculoskeletal results were noted, including normal gait. (AR 1589.) A physical examination performed later that month, which followed his hospitalization for a "non-ST elevation myocardial infarction," showed normal gait and bilateral lower extremity edema. (AR 1980, 1983.)

In November 2023, Plaintiff underwent a diabetic foot evaluation and was assessed with "type 2 diabetes mellitus with diabetic neuropathy." (AR 1790–93.) The foot screening showed foot swelling and foot and ankle weakness. (AR 1791.) Plaintiff's physical examination was normal, with "muscle strength (5/5) for all groups tested" and "ankle joint [range of motion] without pain or crepitus [bilaterally]." (AR 1791.) The next month, Plaintiff was noted to be "wheelchair bound" due to shortness of breath while walking a "couple of blocks." (AR 1794.)

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on January 28, 2022 (AR 18, 166–76), and again on reconsideration on November 4, 2022 (AR 18, 181–86). Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 196–97.) At the hearing on May 14, 2024, Plaintiff appeared with counsel and testified before an ALJ as to his alleged disabling conditions. (AR 45–55.) A Vocational Expert ("VE") also testified at the

hearing.  (AR 55–62.)

**C.      The ALJ's Decision**

In a decision dated August 1, 2024, the ALJ found that Plaintiff was not disabled, as defined by the Act.  (AR 18–29.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920.  (AR 19–29.)  The ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2011, and had not engaged in substantial gainful activity since June 14, 2021, the amended alleged onset date (step one).  (AR 21.)  At step two, the ALJ found Plaintiff's following impairments to be severe: status post right big toe amputation with Charcot foot, diabetes mellitus, obesity, chronic kidney disease stage 4, diabetic retinopathy, and peripheral neuropathy. (AR 21.)   The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 21–22.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[3] and applied the assessment at steps four and five (AR 22–27).  *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§] 416.967(b), except he can stand walk 4 hours in the 8-hour workday; occasionally push/pull with the bilateral lower extremities due to neuropathy; with occasional climbing ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally stoop, balance, kneel, and crouch; never crawl; and never work at unprotected heights or with dangerous moving machinery.

(AR 22.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not fully

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id*.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

4

supported for the reasons explained in [the ALJ's] decision." (AR 23.)

The ALJ determined that Plaintiff did not have any past relevant work (step four) and that, given his RFC, he could perform a significant number of jobs in the national economy (step five). (AR 27–28.)  Finally, the ALJ concluded Plaintiff has not been disabled from June 14, 2021, through the date of the decision, August 1, 2024.  (AR 28–29.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on May 27, 2025.  (AR 1–7.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 416.1481.

### III.    LEGAL STANDARD

**A.    Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* at § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act."  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520).  The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments.  If not, the claimant is not disabled.  If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1.  If so, the claimant is automatically presumed disabled.  If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy.  If so,

the claimant is not disabled.  If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted).  "Substantial evidence . . . is 'more than a mere scintilla'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  *See also Ford v. Saul*, 930 F.3d 1141, 1153–54 (9th Cir. 2020).  "This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") (citations omitted).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa*

*v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends the ALJ erred in the consideration of the persuasiveness of consultative examining physician Dr. Agrawal's opinion and failed to articulate clear and convincing reasons for rejecting his subjective-symptom testimony.  (Doc. 14.)  The Commissioner responds that the ALJ properly evaluated Dr. Agrawal's opinion and substantial evidence supports the ALJ's evaluation of Plaintiff's symptoms.  (Doc. 16.)

The Court agrees with Plaintiff that the ALJ did not adequately evaluate the opinion of Dr. Agrawal.  Because further proceedings are required regarding the medical opinion evidence, the Court does not reach the other allegations of error.[4]

### A.    Legal Standard

Plaintiff's claim for SSI is governed by the agency's regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017.  20 C.F.R. § 416.920c.  The regulations set "supportability" and "consistency" as "the most important factors" when determining

---

[4] *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Rendon G. v. Berryhill*, No. EDCV 18-0592-JPR, 2019 WL 2006688, at *8 (C.D. Cal. May 7, 2019); *Harris v. Colvin*, No. 13-cv-05865 RBL, 2014 WL 4092256, at *4 (W.D. Wash. Aug. 11, 2014); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

the opinions' persuasiveness.  20 C.F.R. § 416.920c(b)(2).  And although the regulations eliminate the prior "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions."  20 C.F.R. § 416.920c(a)–(b).

The Ninth Circuit has issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant.  *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources.").  Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations.  Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  Accordingly, under the regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings."  *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)).  *See also id*. § 416.920c(b).  "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'"  *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)).  *See also id*. § 416.920c(c)(1).  "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'"  *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).  *See also id*. § 416.920c(c)(2).

As the Ninth Circuit also observed,

> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion.  *See id.* § 404.1520c(c)(3).  Thus, an ALJ can still consider the length and purpose

of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id*. § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors:

*Woods*, 32 F.4th at 792; *see also* 20 C.F.R. § 416.920c(c)(3). "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'" *Id*. (quoting § 404.1520c(b)(3)). *See also id*. § 416.920c(b)(3). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id*. Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in his decision. *See* 20 C.F.R. § 415.920b(c)(3).

With these legal standards in mind, the undersigned reviews the weight given to Dr. Agrawal's opinion.

**B.    Analysis**

The ALJ determined that Dr. Agrawal's opinion was "not persuasive" because

> Limitations to this degree are out of proportion to the medical records as a whole including physical examination findings showing 5/5 motor strength for all the muscle groups tested without pain or crepitus noted with a normal to antalgic gait. Further, this is unsupported by Dr. Agrawal's own treatment notes showing sensation deficits with glove like neuropathy in the bilateral below knees and bilateral hands with antalgic gait due to right knee pain and positive Romberg sign with 5/5 motor strength throughout, except 4/5 in the left upper and left lower extremity. (Exhibits 7F, 9F and 23F).

(AR 26–27.)

The Court concludes that the ALJ's evaluation of Dr. Agrawal's opinion is deficient because the ALJ did not adequately discuss the supportability and consistency factors and failed to articulate an explanation for rejecting that opinion that is supported by substantial evidence. *Woods*, 32 F.4th at 792 (holding that an ALJ can "reject an examining or treating doctor's opinion as unsupported or inconsistent" if the ALJ "provide[es] an explanation supported by substantial evidence"). Although "the [] regulations eliminate the previous hierarchy of medical opinion testimony that gave special status to treating physicians, ALJs must still provide sufficient reasoning for federal courts to engage in meaningful appellate review." *Shannon B. v. Comm'r, Soc. Sec. Admin*., Case No. 6:21-cv-01144-

9

HL, 2023 WL 371650, at *5 (D. Or. Jan. 24, 2023) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection" of certain evidence), and *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").)

With respect to the supportability factor, the ALJ found that Dr. Agrawal's "own treatment notes," which showed "sensation deficits with glove like neuropathy in the bilateral below knees and bilateral hands with antalgic gait due to right knee pain and positive Romberg sign with 5/5 motor strength throughout, except 4/5 in the left upper and left lower extremity," did not support the opined limitations. (AR 26–27.) As an initial matter, Dr. Agrawal does not have his "own treatment notes" of Plaintiff, as he is an examining—not treating—physician. *See Red v. Colvin*, No. 2:15-CV-0069-TOR, 2016 WL 335868, at *6 n.1 (E.D. Wash. Jan. 27, 2016) ("[A]s an examining mental health provider, [consultative physician] did not have substantial treatment notes upon which to base his opinion."). The ALJ instead appears to refer to Dr. Agrawal's examination findings, but the ALJ does not explain how those findings do not support Dr. Agrawal's opinion, as the regulations require. To the contrary, those findings, including "sensation deficits with glove like neuropathy" in the knees and hands, "antalgic gait," and "positive Romberg sign," tend to support Dr. Agrawal's opinion that Plaintiff could lift and carry 5 to 10 pounds infrequently; could stand, walk, or sit one hour in an eight-hour day; and could never stoop, crouch, kneel, crawl, or balance.[5] Without any explanation as to how Dr. Agrawal's (seemingly abnormal) examination findings do not support the opined limitations, the Court concludes that the ALJ's supportability analysis lacks substantial evidence. *See Schmitzer v. O'Malley*, No. 1:22-CV-1038 JLT BAM, 2024 WL 4345772, at *5 (E.D. Cal. Sept. 30, 2024) (finding error in the supportability discussion where "the ALJ did not make any findings as to what extent—if any—Dr. Pietruszka supported the limitations identified in" the

---

[5] So too do the other examination findings made by Dr. Agrawal—unaddressed by the ALJ—of Plaintiff's difficulty moving around the waiting room; a limp walking down the hall to the examination room; significant effort to sit in a chair; significant difficulty getting in and out of chair and getting onto the examination table; significant difficulty taking off shoes and socks; abnormal joint, cervical, and thoracolumbar ranges of motion; positive straight leg raising test; and foot deformities. (AR 1341–42.)

opinions and "failed to explain to what extent Dr. Pietruszka's own treatment records did not support his opinions."); *Katherine D. v. Comm'r, Soc. Sec. Admin.*, No. 6:20-CV-1920-MO, 2024 WL 244625, at *6 (D. Or. Jan. 23, 2024) ("Regarding 'supportability,' the ALJ erred by failing to discuss the strength of the evidence underlying Dr. Hallenburg's conclusions."); *Ann M. v. Kijakazi*, No. 2:23-CV-01081-MAA, 2024 WL 39193, at *5 (C.D. Cal. Jan. 3, 2024) (finding a supportability analysis insufficient where "the ALJ did not explain why she found [the medical] opinions not supported, nor did she cite any findings in [the] treatment notes that demonstrate a lack of support").

The ALJ's evaluation of the consistency factor is equally deficient.  The ALJ found that Dr. Agrawal's opinion was "out of proportion to the medical records as a whole including physical examination findings showing 5/5 motor strength for all the muscle groups tested without pain or crepitus noted with a normal to antalgic gait."  (AR 26.)  The ALJ does not cite to any specific "physical examination findings" documenting these results, however, so it is not clear to what they refer.[6]

Elsewhere in the decision, the ALJ discusses records documenting "muscle strength (5/5) for all groups tested," (AR 25 (citing AR 1791–97)), "ankle joint [range of motion] without pain or crepitus [bilaterally]" (AR 25 (citing AR 1791–97)), and "normal gait" (AR 24 (citing AR 1357) and AR 25 (citing AR 1589, 1910, 1980, 1983)).  To the extent this was the evidence on which the ALJ was relying in finding Dr. Agrawal's opinion inconsistent with the record, such reliance ignores that these same records also documented symptoms consistent with the opined standing, walking, and postural limitations, such as (1) Plaintiff's diagnosis of "type 2 diabetes mellitus with diabetic neuropathy" (AR 1790–93); (2) his foot swelling and foot and ankle weakness (AR 1791); (3) his status as "wheelchair bound" due to "numbness, tingling, and vision changes" and shortness of breath while walking a "couple of blocks" (AR 1587, 1794); (4) his diagnosis of "Charcot's joint, unspecified, ankle and foot"[7] (AR 1357); (5) his "poorly controlled diabetes mellitus" (AR 1587–

---

[6] Instead, the ALJ cites to (1) Dr. Agrawal's opinion; (2) a consultative psychological assessment; and (3) 105 pages of medical records from Family Healthcare Network dated 1/8/22 to 3/27/24.  (*See* AR 27 (citing AR 1339–44, 1380–86, 1886–1990).)

[7] "Charcot foot is defined as a 'deformity of the foot; seen in individuals with diabetes mellitus[.]'" *Richardson v. Colvin*, No. 06:13-CV-00880-HZ, 2014 WL 4722658, at *3 (D. Or. Sept. 19, 2014) (quoting TABER'S CYCLOPEDIC MEDICAL DICTIONARY 419 (21st ed.2009)); *see also id.* (defining "Charcot joint" as a "type of diseased joint, marked by hypermobility" where "[b]one decalcification occurs on the joint surfaces, accompanied by bony overgrowth about

89); and (6) multiple hospitalizations to treat "heart failure and/or decompensated renal failure" and non-ST elevation myocardial infarction with bilateral lower extremity (leg) edema (AR 1907–12, 1980, 1983).  Based on these cited records, ALJ's evaluation of the consistency of Dr. Agrawal's opinion appears based on "cherry-picked" notations from the medical evidence, which is improper. *Buethe v. Comm'r of Soc. Sec.*, No. 2:20-cv-552-KJN, 2021 WL 1966202, at *4 (E.D. Cal. May 17, 2021) (collecting cases); *Cruz v. Kijakazi*, No. 1:21-cv-01248-AWI-HBK, 2023 WL 1447855, at *5 (E.D. Cal. Feb. 1, 2023) ("Even under the new regulations, the ALJ may not 'cherry-pick' evidence in discounting a medical opinion."). *See also* 42 U.S.C. § 423(d)(5)(B) (requiring an ALJ base the decision on "all the evidence available in the [record]."); *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (the court may not affirm where the ALJ "pick[ed] out a few isolated instances of improvement" to support the denial of benefits).

The Court is aware of the general proposition that ALJ's are to resolve ambiguities and conflicts in the record. *Ford*, 950 F.3d at 1154.  It is also mindful of the deference desired by the agency in promulgating these revised regulations. *See* REVISIONS TO RULES, 82 Fed. Reg. 5844-01 at *5860 ("[The new regulations are] essential for [the agency's] administration of a massive and complex nationwide disability program where the need for efficiency is self-evident.").  However, the text of the regulations explicitly requires an explanation of how the ALJ considered the supportability and consistency of an opinion.  20 C.F.R. § 416.920c(b)(2).  Harmonizing this requirement with Ninth Circuit law prohibiting cherry-picking and requiring a detailed and thorough summary of conflicting evidence, and an interpretation and findings thereon, the ALJ must explicitly address evidence that supports and is consistent with a less-than-persuasive medical opinions, and should this evidence fail to persuade, the ALJ must provide legally sufficient reasons. *See Buethe*, 2021 WL 1966202, at *7 (citing *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("[T]he ALJ must provide sufficient reasoning that allows [for] review.")). *See also Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1994) (while the ALJ need not discuss all evidence presented to them, they must explain why "significant probative evidence has been rejected").  This the ALJ did not do, and

the margins" and noting that "[d]eformity and instability of the joint are characteristic."); THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 869 (19th ed. 2011) (effects of diabetic neuropathy in the lower extremities include "Charcot's joint" which is defined as the "dislocation or destruction of normal foot architecture").

therefore the Court declines to find substantial evidence supports the RFC.  *See Garmany v. O'Malley*, No. 1:23-CV-00607-HBK, 2024 WL 3105824, at *6 (E.D. Cal. June 24, 2024) (errors in addressing medical opinion evidence "calls into question whether the assessed RFC . . . [is] supported by substantial evidence").

Moreover, while the Commissioner attempts to provide reasons why the ALJ could have found that limitations opined by Dr. Agrawal were not supported by any of his own findings or the other physical findings in the record (*see* Doc. 16 at 6–8), this is the sort of *post hoc* rationale that is impermissible in the Social Security context.  *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("We are constrained to review the reasons the ALJ asserts."); *Stout v. Comm'r Soc. Sec. Admin*, 454 F.3d 1050, 1054 (9th Cir. 2006) (a reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the ALJ himself); *see also Walker v. Comm'r of Soc. Sec.*, No. 2:22-CV-01871-EJY, 2024 WL 64784, at *4 n.4 (D. Nev. Jan. 4, 2024) ("In response to Plaintiff's motion, the Commissioner specifically addresses the supportability and consistency factors and provides citations to the record.  Unfortunately these are *ad hoc* rationales the Court cannot consider.").

## C.    Harmless Error Analysis

The ALJ's erroneous analysis of the persuasiveness of Dr. Agrawal's opinion is not harmless.  Errors are harmless when a reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the [evidence], could have reached a different disability determination." *Stout v. Comm'r, Social Sec. Admin*., 454 F.3d 1050, 1056 (9th Cir. 2006).  Here, were the ALJ to have accepted Dr. Agrawal's opinion, they likely would have reached an RFC determination with a less than sedentary exertional level.  That, as Plaintiff points out (Doc. 14 at 7), together with Plaintiff's age, would have warranted a finding of disability under the Medical-Vocational Guidelines, 20 CFR, Part 404, Subpart P, Appendix 2 § 201.09.  *See Undra D. v. Acting Comm'r of Soc. Sec.*, No. 2:24-CV-01609-TLF, 2025 WL 2962099, at *3 (W.D. Wash. Oct. 21, 2025) ("This error was not harmless; if Dr. Budak's opinion had been properly assessed, plaintiff may have been found disabled under the Medical-Vocational Guidelines grids. 20 C.F.R. 404 Appendix 2 to Subpart P, 201.00(g) 201.09.")  *See also David C. v. Comm'r of Soc. Sec.*, No. 23-CV-0655-WQH-

MMP, 2024 WL 3596856, at *12 (S.D. Cal. July 31, 2024) (error not harmless where the Court finds the ALJ erred by failing to address adequately the supportability factor when evaluating a medical opinion); *Suzi Marie H. v. O'Malley*, No. 3:22-cv-01963-WQH-AHG, 2024 WL 965233, at *14 (S.D. Cal. Mar. 5, 2024) (determination that medical opinions were unpersuasive without providing an explanation supported by substantial evidence was "not inconsequential since it could have impacted the final RFC.").

## D.    Remand for Further Proceedings

The decision whether to remand a matter for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Notably, except in rare instances, when a court reverses an agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).

Here, the Court finds that remand for additional proceedings is necessary because the persuasiveness of Dr. Agrawal's opinion must be analyzed further before a determination of disability may be made.[8] *See* 20 C.F.R. § 416.920c(c)(2); *see also Cesar C. v. Dudek*, No. 1:24-CV-03177-EFS, 2025 WL 1065959, at *10 (E.D. Wash. Apr. 9, 2025) (remanding for further proceedings where the ALJ "failed to address the supportability of [medical] opinions in any meaningful way"); *Arroyo v. Comm'r of Soc. Sec.,* No. 2:22-CV-00360-DMC, 2023 WL 3853485, at *8 (E.D. Cal. June 6, 2023) (remanding for further proceedings where the ALJ failed to explain how a physician's opinion was inconsistent with other objective medical evidence); *Buethe*, 2021 WL 1966202, at *7 (Because the ALJ cherry-picked facts and ignored probative evidence, including medical opinion evidence, "the proper remedy is remand, where the ALJ may either (a) reaffirm [their] decision after a more thorough explanation of why these opinions were unsupported by and inconsistent with the relevant evidence, or (b) award benefits."); *cf. Emily B. v. Kijakazi*, No. 4:20-CV-05174-SMJ, 2022 WL 17224299, at *6 (E.D. Wash. Sept. 14, 2022) (observing that

---

[8] As to the ultimate outcome of Plaintiff's claim, the Court expresses no opinion as to the level of persuasiveness that should be ascribed to the limitations. Nor does the Court express what Plaintiff's RFC ultimately should be. These are for the ALJ to decide. *Ford*, 950 F.3d at 1154.

14

the revised regulations rejected application of the Ninth Circuit's "credit-as-true" doctrine to medical opinions and the commentary expressly stated: "it is never appropriate under our rules to 'credit-as-true' any medical opinion").

### V.    CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED.  The case is REMANDED to an ALJ for further proceedings consistent with this Order.  The Clerk of Court is DIRECTED to enter judgment in favor of Plaintiff Frank Zepeda Jr. and against Defendant Frank Bisignano, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: __**April 22, 2026**__                    ____/s/ *Sheila K. Oberto*____
                                        UNITED STATES MAGISTRATE JUDGE

15